**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

In re:
**CAPITAL ONE CONSUMER DATA
SECURITY BREACH LITIGATION**                    **MDL No**: 2915

*Wisconsin Plaintiffs' (Baisden, et al. vs. Capital One Financial Corporation, et al.)*
**BRIEF OBJECTING TO
PLAINTIFF'S MOTION FOR TRANSFER OF ACTIONS**

Plaintiff in <u>Fadullon v. Capital One Financial Corporation</u> (WD Wash., 19 CV 1189) has moved

pursuant to 28 USC §1407 to consolidate all pending putative class actions against Capital One

Financial Corporation and subsidiaries.

Wisconsin plaintiffs oppose this motion for the reasons stated herein.

**<u>Background Facts Pertinent To Objection:</u>**

The Wisconsin plaintiffs in *Baisden, et al. vs. Capital One Financial Corporation, et

al.*,[1] now pending in the Western District of Wisconsin as case number 19 CV 623, filed their

action on August 7, 2019. That action asserts the basic facts known to this Court and all litigants,

namely that Capital One announced on July 29, 2019, that it had suffered a data breach that

affected as many as 106,000,000 accounts.

Where the Wisconsin action differs first is that the Wisconsin plaintiffs allege that their

*harm* is different. Wisconsin has a robust set of consumer protections known as the "Wisconsin

Consumer Act." This Act imposes on companies who enter into consumer credit contracts with

Wisconsin residents a variety of obligations, including an obligation of good faith that requires

---

[1] Hereinafter, "the Wisconsin action."

that corporations such as Capital One and its subsidiaries observe "honesty in fact" and "reasonable commercial standards of fair dealing" when interacting with their Wisconsin customers. This obligation is not one of common law or contractual law, but a specific statutory obligation that applies to any company that offers credit to a Wisconsin resident.

But the Wisconsin action also differs from many, if not all, of the other actions in that it presents a specific harm that, to counsel's knowledge, is not alleged in any (or at least most) other actions, and asserts a separate class of plaintiffs that again are not present in any (or at least not most) other actions.

The Wisconsin case plaintiffs allege that Capital One and its subsidiaries have harmed all Wisconsin applicants by delaying notification about which actual applicants' data was compromised as well as what data, specifically, was compromised. That is, Capital One has thus far – already 27 days after the breach—refused to tell Wisconsin residents whether their information *actually was* released in the data breach, and if so, what information was released. The Wisconsin case alleges that this is a harm, in and of itself, primarily because of the statutory obligation of good faith imposed by Wisconsin law. It is undisputed that thus far, Capital One has said it will notify *only* those applicants whose social security numbers were compromised – but Capital One has admitted that information including transactional information on various days over a three-year period, as well as an undisclosed amount of application data, was compromised.

Further, the Wisconsin case seeks certification of a class of Wisconsin residents whose information was not actually released, but who had to fear that it was because Capital One in bad faith refused to notify those customers that their data had not been breached.

**Argument:**

The moving party bears the burden of showing that transfer to any particular district, or consolidation at all, is *needed*. In re Best Buy Co., 804 F. Supp.2d 1376, 1379 (J.P.M.L. 2011).

Among the factors for a court to consider in determining whether a case or cases should be swept into MDL litigation are: how much discovery will actually be needed in the case, In re Medi-Cal Reimbursement Rate Reduction Litig., 652 F. Supp. 2d 1378, 1378 (J.P.M.L. 2009), and whether there are actually *common questions* of fact. 28 U.S.C. §1407(a).

That italicized phrase bears a heavy load in this matter, because the questions raised by the Wisconsin case are not common to the remainder of the lawsuits, and because there are likely to be few *questions* of fact in this case, leaving only legal issues remaining.

I. **There are insufficient "common" questions of fact between the Wisconsin case and other filed lawsuits**

  A. **The Wisconsin case, unlike most if not all of the other lawsuits, alleges harm as a result of Capital One's failure to notify in a timely manner all applicants about whether they are in fact victims.**

Examining the complaints filed by other litigants, using those on *Fadullon*'s Exhibit A as exemplars, demonstrates that the Wisconsin case has separate issues of fact, namely:

- Whether personal private information ("PPI") submitted by *all* applicants[2] for a credit card between 2005 and 2019 was actually compromised, or simply *some* applicants, and

---

[2] While most litigants speak of "customers" of the defendants, "customers" is inaccurate; the data breach was of *application* material, and it is not clear yet whether Capital One retains application material when it declines an application; hence, at this point the appropriate nomenclature is "applicants."

- If not *all* applicants' data was compromised, whether Capital One is able to discern whose data was compromised, and how quickly it could do so, and

- Whether Capital One had the capability of notifying those applicants' whose data was not compromised that their data is safe, and

- Whether Capital One had the capability of securely notifying customers whose social security numbers were compromised more quickly than by US Mail, and

- Whether Capital One had the capability of securely notifying customers whose social security numbers were *not* compromised, but who had other data leaked in the breach, that their data was at risk, and what data was at risk.

The other proposed classes do not allege these types of potential harm[3], likely because the Wisconsin Consumer Act does not apply to applicants or customers who had no connection to Wisconsin, and no other law in the United States is as far-reaching in its protections as the Wisconsin Consumer Act.[4] So while Wisconsin's *law* is unique, so are the facts pertaining to Wisconsin citizens, who can be awarded actual damages[5] based on actions they take to protect their identities during the time Capital One holds them in limbo, not knowing whether their information was compromised or what information, specifically, was compromised.

---

[3] For example, *Zosiak*, D.D.C. Case 19-2265, and *Tadrous,* D.D.C. Case 19-2292, *Berger,* D.D.C. Case 19-2298 each propose a class of "All persons in the United States whose Sensitive information was maintained" on Capital One's system, but claim Capital One's liability arises only with respect to those whose information was actually compromised. 19 CV 2265, D.D.C., Complaint, Par. 58; 19-2292, D.D.C., Complaint Par. 63., 19 CV 2298, D.D.C. Complaint Par. 75.

[4] See "Wisconsin Consumer Act – A Critical Analysis," Heiser, 57 Marquette L.R. 389, and "Wisconsin Consumer Act – A Freak Out?" Barrett, Jones, 57 Marquette L.R. 483.
[5] See §421.108 and §425.302(2), Wis. Stats.

**B.** <u>**The Wisconsin case involves factual questions about the need for a**</u>

<u>**preliminary injunction.**</u>

The Wisconsin plaintiffs also seek, on behalf of the class, an injunction, which they will seek at the earliest opportunity, requiring Capital One to provide information to Wisconsin citizens about who was affected, and how, and also to provide protection against harm from the data breach as soon as possible.

The questions involved in whether a preliminary injunction should be issued are whether the movant party has an adequate remedy at law, whether the litigant will suffer irreparable harm if the injunction is denied, and the likelihood the litigants will win on the merits. See, e.g., <u>Ezell v. City of Chicago</u>, 651 F.3d 684, 694 (7th Cir. 2011). While it is anticipated that Capital One will argue that it can pay damages to any class members, typical class resolutions provide *de minimis* protections and awards for actual class members, awards that ultimately provide no real reimbursement for consumers.[6]

The "irreparable harm" in particular is unlikely to be a common question; harm from having to take action to protect oneself from identity theft frequently involves intangible losses such as taking time away from hobbies or vacations, or selling possessions to pay for expenses. <u>See</u> <u>"Identity Theft: The Aftermath 2017,"</u> Identity Theft Resource Center[7]. It is unlikely that 106,000,000 people will have the same irreparable harm from worrying about whether their information was compromised.

---

[6] See, e.g., "Bad news: Your $125 Equifax data breach payout is pretty damn unlikely." <u>C/Net</u>, <u>https://www.cnet.com/how-to/bad-news-your-125-equifax-data-breach-payout-is-pretty-damn-unlikely/</u>, August 14, 2019. Even if each Equifax customer were to actually get the $125, approximately 10% of all identity theft victims suffer losses of $6,000 in goods and services, and $1,200 in out-of-pocket expenses.
[7] <u>https://www.ftc.gov/system/files/documents/public_comments/2017/10/00004-141444.pdf</u>.

II.    **There are not actually _issues_ of fact in this case, since most of the information will be undisputed, leaving only legal questions.**

MDL transfer should not occur as the primary issues are legal ones, rather than factual ones. Multidistrict Litig. Manual §5.4. In re: Medi-Cal Reimbursement Rate Reduction Litigation, 652 F. Supp.2d 1378 (J.P.M.L. 2009); In re Real Estate Transfer Tax Litig., 895 F. Supp.2d 1350, 1351 (J.P.M.L. 2009); In re Multijurisdiction Practice Litig., 52 F. Supp.3d 1377,  1378 (J.P.M.L. 2014).  In this case, the relevant facts are not actually very much in issue, meaning that the case will be primarily decided on questions of law.

The _Fadullon_ movants are required to prove that there are actual issues of fact to resolve, but they concede that this is not the case:

> In every case, the plaintiffs' claims turn on **_whether Defendant Capital One is legally culpable_** for the alleged incident.

Fadullon Brief, Doc. 1-1, pp. 4-5 (emphasis added). The _Fadullon_ movants are correct, because almost _none_ of the facts are disputed.

Capital One has already admitted there was a data breach, and provided some specific information about what information was compromised, and how many people it affected. It publicly posted this information.[8] There is no dispute about what happened, when it happened, when Capital One discovered the problem, and when the companies announced it.

It is public knowledge that the information was maintained on Amazon's servers it makes available to third parties, and this, too, appears uncontestable. (Even if it was not actually _Amazon_ that provided the services, the undisputed fact that needs no further resolution is that Capital One used cloud-based storage for its data.)

---

[8] "Information on the Capital One Cyber Incident", capitalone.com,  https://www.capitalone.com/facts2019/ .

It is public knowledge and undisputable that the information was posted on at least one website, "Github." Most, if not all, of the details of how the hack occurred are either already known, or easily ascertainable by computer experts.[9]

Capital One's decision to actually notify only 140,000 people out of 106,000,000 is also indisputable, because again, Capital One publicly said that is how it would respond to this incident.

Even where there are facts which are as yet unknown to the parties, it is almost certain that when information about those facts is obtained in discovery, the facts will not be disputable. The parties do not yet know, for example, why Capital One chose to use cloud storage over other options, or how Capital One used the tools provided by the cloud storage provider to configure security for its public-facing access portals, or what Capital One did to monitor its cloud storage facilities, or why it took 10 days for Capital One to announce what had happened, or why Capital One is refusing to notify more than 0.1% of all the affected people. But when that information is obtained in discovery, it is likely that it, too, will be indisputable.

That leaves as common questions not *what happened*, but what is the legal impact of what happened – meaning that this is an issue of *law*: Do Capital One's actions actually constitute a breach of contract[10], or negligence, or a violation of Wisconsin's unique statutes?

---

[9] See, e.g., <u>Capital One Data Theft Impacts 106M People</u>," Krebs On Security, July 30, 2019, <u>https://www.capitalone.com/facts2019/</u> . Krebs is able to post details of the hackers postings, and data security experts were quickly able to identify how the breach likely occurred.
[10] Capital One's contracts, too, are not actually in dispute. Capital One makes them freely available on the Internet. See <u>U.S. Consumer Credit Card Agreements</u>, Capital One Financial Corporation, <u>https://www.capitalone.com/credit-cards/lp/credit-card-agreements/</u>

III. **Wisconsin's unique Wisconsin Consumer Act presents additional reasons to let the Wisconsin case proceed as a Wisconsin-only class.**

MDL transfer should be declined when the action involves state law claims only, rather than federal common law claims. See In re AT&T Mobility Wireless Data Servs. Sales Tax Litig., 710 F. Supp. 2d 1378, 1380 (J.P.M.L. 2010) (declining to transfer an action situated in Southern District of Texas because the plaintiff's claims derived entirely from Texas state law and did not arise under the federal statute at the center of all of the other actions). This is especially true when an action involves distinct causes of action in which different legal standards make different facts relevant. See, e.g., In re Skinnygirl Margarita Beverage Mktg. & Sales Practice Litig., 829 F. Supp. 2d 1380, 1381.

The Wisconsin case meets those criteria, because Wisconsin's Consumer Act is unlike any other particular state law. Under the Act, it is more likely that the Wisconsin case may resolve without any litigation. The Wisconsin Consumers intend to seek initial injunctive relief, and Wisconsin allows the participation of the Wisconsin state government both formally and informally.

Under Wisconsin law, the Wisconsin plaintiffs may not seek actual damages unless and until the plaintiffs send a written notice to defendants allowing the defendants 30 days to agree to an appropriate remedy. §426.110(4), Wis. Stats. If the defendants agree to those remedies, there is no class action for damages. §426.110(4)(c), Wis. Stats. This is an encouragement for the defendants to resolve the Wisconsin case quickly, because it will minimize the legal costs in responding to that state's action; further, Wisconsin plaintiffs should be allowed to benefit from this procedure.

Also, the Secretary of Wisconsin's Department of Financial Institutions must be given notice of a pending class action brought under the Wisconsin Consumer Act, and is allowed up to 30 days to join as a party plaintiff.  The Secretary bears the costs of notice of the action even if she does not opt to participate, and can seek reimbursement for those costs from the defendants. §421.110(16), Wis. Stats. This means that the Wisconsin plaintiffs may shift the costs of notice to the State, and the State will have the option of separately seeking reimbursement.

Wisconsin law on negligence also differs from that of many other states. See, e.g., Smithfield Foods, Inc. v. United States (ED Wis. 2015, Case 13-C-651)(Wisconsin law differs from California law regarding negligence), and see Tesar v. Anderson, 2010 WI App 116 par. 6, 329 Wis.2d 240, 789 N.W.2d 351, 355 (Wis. App. 2010)(Wisconsin follows the dissent in *Palsgraf* regarding negligence); Brotherhood Shipping Co. Ltd. v. St. Paul Fire & Marine Ins. Co., 985 F.2d 323, 326 (Wisconsin negligence law differs from federal admiralty law on negligence).[11]

### Conclusion:

It may be more efficient for Capital One and some parties to proceed in a combined case, but MDL transfer is not premised solely on efficiency; rather, it is necessary and allowable only where there are issues of fact that may require resolution, and where specific state laws do not argue against consolidation.

Because there are unlikely to be any substantial issues of fact, the cases against Capital One will be decided as legal questions. Since the Wisconsin case's legal issues are unique, the

---

[11] See also "Contributory Negligence/Comparative Fault Laws In All 50 States," Matthiesen, Wickert & Lehrer, S.C., https://www.mwl-law.com/wp-content/uploads/2018/02/COMPARATIVE-FAULT-SYSTEMS-CHART.pdf (Wisconsin is one of 23 states with a modified comparative fault standard, affecting recovery where the damaged party is 51% or more at fault, but noting that in Wisconsin the standard reduces the award by the amount of plaintiff's fault, barring recovery only where the plaintiff is more at fault than the defendant.

cases should not be consolidated under MDL. Instead, the Court may fashion a remedy to avoid

duplicative or unnecessary discovery costs, and transfer or group cases as appropriate to combine

classes who present similar questions of law to a particular court.

Dated: This 26th day of August, 2019.                    **Lawton & Cates, S.C.**
*Electronically signed by:*

/s/ Briane F. Pagel
Attorney Briane F. Pagel
State Bar No. 1025514
Attorney Dixon Gahnz
State Bar No. 1024367
Attorney Daniel Bach
State Bar No. 1005751
Attorney Terrence Polich
State Bar No. 1031375

P.O Address:
345 W. Washington Ave. Suite 201
P.O. Box 2965
Madison, WI 53703
P: 608.282.6200
F: 608.282.6252
bpagel@lawtoncates.com
dgahnz@lawtoncates.com
dbach@lawtoncates.com
tpolich@lawtoncates.com